## Supreme Court—General Term—First Department.

### PEOPLE v. ELMORE.

FORGERY—UTTERING FORGED CHECK—EVIDENCE OF GUILTY
KNOWLEDGE AND INTENT—SIMILAR TRANSACTIONS—CON-
VICTION OF DISORDERLY CONDUCT AS AFFECTING
CREDIBILITY—REQUEST TO CHARGE—COURT
BEING UNDER MISAPPREHENSION.

Upon the trial of an indictment for forgery in the second degree in
uttering a check, knowing the same to be forged, it appeared that
the defendant, after endeavoring to have the check cashed elsewhere,
presented it to a grocer in payment of sixty or seventy cents' worth
of provisions, purchased by her, receiving the balance thereof in
money, at the same time stating it was a good check. It was drawn
for $13, and purported to be signed by Wm. F. Scott. No person
of that name ever had an account at the bank on which it was drawn,
and Wm. F. Scott testified that the check was not signed by him,
and that there was no other person of that name in New York city to
his knowledge. It also appeared that on the same day she passed
another small check, under similar circumstances, as to which check
there was like evidence that it was a forgery, and that on the day
after she changed her place of residence to a remote part of the city.
Upon the trial she stated that the checks had been given to her
to be cashed by a man with whom she was living, and that she
believed them to be good.

*Held*, that the evidence as to the forgery of the check was sufficient for
the consideration of the jury, and that defendant's knowledge of
its character might be inferred from what transpired at the time of
passing it, and her conduct afterward, and also from the fact that
near the same time she passed another check under similar circum-
stances, which probably was forged.

It appeared on defendant's cross-examination that about three weeks
previous to the transaction involved, defendant passed another
small check which, as she testified, " came back bad."

*Held*, a circumstance which the jury might consider as having some bear-
ing on the reliability of her testimony as a witness, and being a trans-
action similar to the one on which the indictment rested and near
the same time. It so far also tended to prove that she probably was
engaged in uttering forged checks of a small denomination.

An error in receiving hearsay testimony of a witness for the prosecution

is cured when the fact testified to appears on the direct examination of the defendant.

The fact that defendant has been arrested, convicted and fined for disorderly conduct may be considered by the defendant as having a bearing upon the weight of defendant's evidence.

Where, on a request to charge as to the bearing of a certain fact in the case, it appears the court, under misapprehension, has confounded it with another fact, it is the duty of counsel, if further directions are desired on the subject, to correct such misapprehension.

APPEAL from a judgment of the court of General Sessions of the Peace, held in and for the City and County of New York, rendered against the defendant on February 12, 1885, convicting her of the crime of forgery in the second degree.

The action was tried before Hon. FREDERICK SMYTH, Recorder of said city, and a jury.

The indictment was found in said court, and in the first count charged the defendant with having forged a certain instrument of the kind commonly called "bank checks," in the words and figures following :

"No.          NEW YORK, July 23d, 1884.

"The Chemical National Bank of New York, pay to myself or bearer Thirteen Dollars ($13).

"WM. F. SCOTT."

The second count in the indictment charged the defendant with having uttered and disposed of the check, knowing the same to be forged.

On the 23d of July, 1884, the defendant, who was at that time living with a man by the name of Frank Elmore, went to the grocery store of Henry Allers, at 452 Eighth avenue, and purchased seventy or eighty cents' worth of groceries, giving Allers the check to pay for them. He asked her if the check was a good check, to which she answered "yes." She thereupon indorsed it. He then delivered the groceries to her, and gave her the difference between the price of the groceries and the amount of the check, in cash. The check was not paid at the bank when presented by Allers. Wm. F. Scott, a witness for the prosecution, testified that the check was not signed by

him, and that he never had a bank account in the Chemical National Bank in the City of New York ; and that there was no other Wm. F. Scott in New York City to his knowledge. The paying teller of the Chemical National Bank testified that Wm. F. Scott never had a bank account in the Chemical National Bank. The day after the defendant delivered the check to Mr. Allers she disappeared from the place where she was then residing, in the city of New York, and was not discovered until December 27, 1884, when she was arrested. On the same day upon which the defendant delivered the forged check to Mr. Allers, she passed on Michael Parrett another check drawn by James McGrath on the National Broadway Bank for twenty-one dollars. There was evidence that this check was also a forgery. James McGrath, a witness for the prosecution, testified that he did not draw the check, and that he never had an account in the National Broadway Bank. The cashier of that bank made oath to the same effect. McGrath testified that he knew no other person of his name. The defendant explained that at the time she passed the checks she was living with a man by the name of Frank E. Jones or Frank Elmore ; that he gave her the checks in question and told her to get them cashed ; that she had no knowledge that the checks were not good checks ; that in fact she believed them to be good checks when she passed them. It appeared on the cross-examination of the defendant that before she took the check set forth in this indictment to Allers, the complainant, she attempted to get it cashed by some one in the same house where she was living, and that failing in that she went to Allers, where, as above set forth, she succeeded in getting it cashed.

The defendant on cross-examination testified that about three weeks prior to the passing of the check referred to in the indictment, she passed upon one Noremac a check for $13, given her by Elmore, which " came back bad." At the close of the case, a motion to strike out this testimony, was made and denied. The court was also asked to charge the jury "that no inference is to be drawn from that check, first, because it was too remote, and secondly, that there is no proof it is a forg-

ery. THE COURT: It was uttered on the same day. I decline to charge anything more than I have on that subject."

The prosecution were allowed, under objection and exception, to elicit from defendant, on cross-examination, the fact that about a year before, she had been arrested and fined $10 " for being out late at night."

Defendant's counsel sought to introduce the evidence of the witnesses Halpin and Rice, experts, to the effect that there was not such a resemblance between the signatures on the checks in question, purporting to have been drawn by Scott and McGrath, and the genuine signatures of the respective witnesses so named, as would be calculated to deceive an ordinary person who was familiar with their respective genuine signatures. This was excluded under objection and exception.

The jury found the defendant guilty of having uttered the forged check knowing it to be forged (the court having submitted to the jury only the count for uttering). The defendant moved the court to set aside the verdict and grant a new trial, which motions were denied.

*A. Suydam*, for the prisoner, appellant.—I. The evidence was not sufficient to prove that a forgery had been committed.

There was no evidence whatever tending in the remotest degree to show that the check set out on the indictment was uttered as the genuine check of the witness, William F. Scott, who was called to prove the forgery. The witness Scott says that he doesn't know the defendant, that the signature on the check in question resembles his signature very remotely, or not at all, and that he never had an account at the Chemical Bank. From the evidence of the witness Allers, it does not appear that he received the check as the genuine check of the witness Scott, or that he had ever heard of that William F. Scott. It is perfectly clear that he took the check on the defendant's assurance that it was " good," and it is equally clear that by " good " he meant that the Chemical Bank would give thirteen dollars for it. It is not conceded by the appellant that a forgery in this case might have been proved by proving that the name " William F. Scott," signed to the check in question, was purely fictitious. 2 *Bish. Cr. L.* 543, 547. But it seems

unnecessary to discuss the question, because there is no evidence to prove that the name on the check was fictitious. The witness Scott says that *he* doesn't know of any other William F. Scott in New York city, but as to the numerous and populous suburbs of this city he says nothing. And the people offered no evidence to show that any inquiry had been made for another William F. Scott. Nor did the evidence throw on the defendant the burden of producing another William F. Scott. For, the first count in the indictment having failed, the defendant stood in the position of an indorsee, or second holder. There may be a presumption that a payee of a check knows the maker. But this presumption does not extend to an indorsee.

II. There was no evidence of guilty knowledge. The proof of forgery as to the McGrath check was even weaker than the proof as to the Scott check. The condition in life of the witness McGrath, who was a laborer, the fact that he keeps no bank account, and the want of similarity in the signatures, militate strongly against the idea that the McGrath check was intended to pass as the genuine check of the witness James McGrath. And it appears affirmatively from McGrath's evidence that there was at least one other man of the same name in this city. There are no other circumstances tending to show guilty knowledge. The fact that the Scott check was first offered to a man who hadn't money enough to cash it; the fact that Elmore kept no bank account; the fact that the signature was in a different hand from the body of the check; these facts, singly and collectively, failed to show that a check received from Elmore was necessarily a forgery.

III. The motion to strike out the evidence relating to a check said to have been passed to one Noremac, should have been granted. The evidence was not liable to objection when offered, because it would have been admissible if proof had been subsequently given that the Noremac check was forged. No such proof was offered, and the evidence relating to the Noremac check should have been stricken out.

IV. The instructions asked for as to said check should have been given. The learned recorder, in replying to this request, probably confounded the Noremac check with the McGrath check. But the language of the request was clear and explicit,

and the reply of the court was clearly liable to mislead the jury.

V. The questions put to the witnesses Halpin and Rice were improperly excluded. This point does not raise the question whether a similarity between the genuine signature and the forged signature is a necessary ingredient of the crime. But the question whether the defendant intended to utter the check as the genuine check of that William F. Scott, who had been a witness, was a very material question in this case, and upon this question of intent the evidence offered was highly material. Its weight would have been for the jury ; its competency was unquestionable.

VI. The questions put to the defendant as to her arrest, were improperly allowed. The evidence called for was not pertinent to the issue, nor did it tend to establish a bad moral character, and was inadmissible according to the most recent decisions of the Court of Appeals. People *v.* Crapo, 76 *N. Y.* 288 ; People *v.* Brown, 72 *Id.* 571 ; People *v.* Casey, *Id.* 393 ; Ryan *v.* People, 79 *Id.* 594 ; People *v.* Noelcke, 94 *Id.* 143, 144 ; 1 *N. Y. Crim. Rep.* 495 ; People *v.* Irving, 95 *Id.* 545 ; 2 *N. Y. Crim. Rep.* 171.

*Randolph B. Martine,* district attorney, and *De Lancey Nicoll* (assistant), for the people, respondent.

DANIELS, J.—The crime of which the defendant was convicted was contained in the second count in the indictment, by which she was charged with having in her possession, and uttering and disposing of as true, a check on the Chemical Bank of New York for the sum of $13, purporting to be drawn by William F. Scott, she well knowing the same to have been forged. The fact that the check was forged was sufficiently proved to render the evidence upon the subject proper for the consideration and decision of the jury, and that she passed it under circumstances rendering it probable that she understood that to be its character, might well be inferred from what transpired at the time when that was done, and her conduct afterwards, and the additional circumstance that near the same time she passed another check, which probably was

forged, under somewhat similar circumstances.  Her conduct after the passage of the check afforded additional reason for believing that what she did had been done with a criminal intent, and the only points required to be determined for the disposition of the appeal, are those relating to the admission or exclusion of evidence, and the manner in which the case was finally submitted to the jury.

It was not proper to receive the statements of the witness McTaggart, that the defendant, immediately after she had passed the check, changed her residence, and obtained another in a somewhat remote part of the city.  But the error intervening in the refusal of the court to strike out this evidence when it was shown to have been given wholly upon information received by the witness, was afterwards corrected by the testimony of the defendant, who, upon her own direct examination, stated that the change was made in her place of residence substantially as McTaggart had testified he had been informed was the fact.  By her evidence the fact was proved beyond controversy, and it was in the case therefore for the consideration of the jury, the same as though McTaggart had given no evidence upon the subject.  After this additional proof was received, there was no ground for the exception to stand upon, which was taken to the refusal of the court to strike out the other statement.

The fact that the defendant passed another small check on Mr. Noremac about three weeks before the passing of the check mentioned in the indictment, was shown upon her own cross-examination, and was a circumstance which the jury might consider as having some bearing upon the reliability of her testimony as a witness upon the trial.  It was a transaction quite similar to the one upon which the indictment rested, and very near the time of the latter occurrence, and so far also tended to prove that she probably was engaged in uttering forged checks of a small denomination.

That she had been arrested would not, if the fact had stood by itself, have been proper proof for the consideration of the jury, but as it appeared that her arrest had been followed by a conviction and fine, the fact was one which the jury could take into consideration as having some bearing upon the weight of

her evidence. The other testimony in the case relating to this arrest and conviction, proved no more than she herself admitted to be the fact, and for that reason receiving it as part of the proof in the case, in no possible manner prejudiced her in her defense. Her history, as well as her conduct near the time of the passing of the check, were not improper subjects for the jury to consider, and the proof elicited upon these subjects was regularly allowed to form a part of the case.

The legal attributes of the crime were very clearly explained by the learned recorder to the jury, and they were directed that they could not convict the defendant unless they found the fact that the check was forged, and that she uttered it knowing that to have been its character, with intent to defraud the complaining witness. These inquiries were submitted to the jury, with the qualification that the defendant was entitled to every reasonable doubt arising upon the evidence in the case, and no more than that could be required in its proper submission to the jury. The court was not bound, after having so submitted the case, to repeat the directions which were given, and the exception taken to the refusal to do that is not well founded. Neither can the exception be of any advantage to the defendant, which related to the disposition of the request concerning the Noremac check, for the time of its passage was not so remote from the time of the passing of the check set out in the indictment, as to render it an improper subject for consideration by the jury. But if it had been, then as the learned recorder appeared to confound it with another check passed by the defendant on the same day, her counsel should have corrected this misapprehension, if any further directions could be required upon this subject to be given to the jury. But no attempt was made to direct the attention of the recorder to the fact that this was not the check which was passed on the day of the passing of the check set out in the indictment.

There was evidence excluded as to the range of the depositors of the bank. But if it had been received, no possible advantage could have been derived from it by the defendant. The case, as it was presented, included the inquiries essential to the commission of the crime of which the defendant was found

guilty, and in neither aspect of it would it have been reduced in its force, if this evidence had been received.

The proof upon all the points was sufficient to require the case to be determined by the jury. The probabilities maintained by it were decisively against the defendant, and neither of the exceptions which have been presented in the points of her counsel, will justify this court in interfering with the result. Her conviction seems to have been well warranted, and both the judgment and the order should be affirmed.

BRADY, J., concurs.